1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SAMREEN RIAZ,                          No.  1:21-CV-00911-ADA-SKO

12              Plaintiff,                   ORDER DENYING IN PART AND
                                            GRANTING IN PART DEFENDANTS'
13        v.                                MOTIONS TO DISMISS PURUSANT TO
                                            FED. R. CIV. P. 12(b)(6)
14   NATHAN HENRY, et al.,
                                            (ECF Nos. 6, 12)
15              Defendant.
                                            ORDER GRANTING LEAVE TO AMEND
16                                          THE COMPLAINT WITHIN **TWENTY-ONE
                                            (21) DAYS**
17

18        This matter is before the Court on Defendants', County of Tulare and Ernest Ceballos

19   ("County Defendants") and Defendants', City of Visalia, Nathan Henry, Edvin Canto, and Art

20   Alvarez ("City Defendants") separate motions to dismiss.  (ECF Nos. 6, 12.)  For the reasons

21   explained below, the Court will grant, in part, and deny, in part, the County Defendants' motion

22   to dismiss and will grant, in part, and deny, in part, City Defendants' motion to dismiss.

23   **I.      BACKGROUND**

24   **A. Factual Background**

25        The following facts are discernable from Plaintiff Samreen Riaz's ("Plaintiff") complaint.  (*See*

26   ECF No. 1.)  Plaintiff resides in Visalia, California.  (*Id.* at 2.)  Nathan Henry, Edvine Canto, and

27   Art Alvarez are peace officers for the City of Visalia Police Department ("VPD").  (*Id.*)  Ernest

28   Ceballos is a mental health crisis service worker for the County of Tulare.  (*Id.*)  On August 11,

                                            1

2020, Defendant Henry reviewed at least 45 of Plaintiff's reports for harassment and stalking that were submitted over the course of a year.  (*Id.* at 2-3.)  In the reports, she described her belief that police units, FedEx drivers, and other professional vehicles harassed her.  (*Id.* at 3.)  In some, she stated that her car's dashboard screen turned red when she was being stalked or harassed.  (*Id.*)  Afterwards, Defendant Henry contacted the Tulare County Crisis center to review her case, and Defendant Ceballos met with Defendant Henry on the morning of August 12, 2020.  (*Id.*)  Defendant Ceballos believed that Plaintiff was gravely disabled and met the criteria for a 5150 hold.  (*Id.*)  Defendant Ceballos advised Defendant Henry that Plaintiff should be transported to the Kaweah Delta Medical Center Emergency Department to obtain a medical clearance and to assess her mental health.  (*Id.*)

At approximately 8:55 a.m. on August 12, 2020, Defendant Henry called Plaintiff, explained to her that he had reviewed her cases, and wished to speak with her.  (*Id.*)  They agreed to meet at Plaintiff's home at around 9:30 a.m. that same morning.  (*Id.*)  Prior to meeting Plaintiff, Defendant Henry contacted Defendants Canto and Ceballos, advising them to meet him at the intersection of Tulare and McAuliff to coordinate their positions beforehand.  (*Id.*)  Defendant Ceballos's associates at the Tulare County Crisis were also present.  (*Id.*)  At the staging, Defendant Canto informed Defendant Henry that Defendant Alvarez wanted them to wait for his arrival.  (*Id.*)  Defendant Henry then asked Defendants Canto and Alvarez to stand by while he, Defendant Ceballos, and Defendant Ceballos's associates, contacted Plaintiff.  (*Id.*)

At approximately 9:30 a.m., Defendant Henry rang Plaintiff's doorbell, and Plaintiff came around to meet him outside.  (*Id.* at 4.)  Plaintiff dressed casually and appeared well kept.  (*Id.*)  Defendant Henry introduced himself, and, upon Plaintiff asking, Defendant Ceballos and his associates identified themselves.  (*Id.*)  Plaintiff then asked for business cards and requested that they step-off her private property, which prompted them to exit the porch area and remain on the walkways of Plaintiff's front yard.  (*Id.*)  Plaintiff asked why the mental health department representatives were present, and Defendant Henry explained that they were concerned with her mental health based on the complaints that she had filed.  (*Id.*)  Defendant Henry inquired into Plaintiff's belief that she was being stalked and harassed, and, consequently, prodded Plaintiff to

go to the hospital for a mental health assessment.  (*Id.*)  Plaintiff made clear that she was opposed to going to the hospital.  (*Id.*)

Defendant Ceballos explained to Plaintiff that she would be assessed, have her blood tested, and then discharged within a few hours.  (*Id.* at 5.)  Plaintiff mentioned that she wanted to review documentation and speak with her lawyer beforehand.  (*Id.*)  Defendant Henry told Plaintiff that they would return around noon.  (*Id.*)  Once Defendant Henry left Plaintiff's residence, he told Defendants Canto and Alvarez, and Lieutenant Fahoum that if Plaintiff refused to go voluntarily, he would take her into custody against her will.  (*Id.*)

At noon, Defendant Henry, Defendant Ceballos, and Defendant Ceballos's associates returned to Plaintiff's residence.  (*Id.*)  Once Plaintiff met with them in her front yard, she told Defendant Henry that she emailed him and left a voicemail, directing him to not show up.  (*Id.*)  At this time, Defendant Canto positioned himself on the lawn, and when Plaintiff began to walk back towards her home, Defendant Canto positioned himself between Plaintiff and the entrance to her patio.  (*Id.*)  When Plaintiff asked whether she could go back into her home, Defendants Canto and Henry said no.  (*Id.*)  Defendant Henry explained that Plaintiff had to obtain a mental health assessment because Defendants believed that she had a "grave disability."  (*Id.*)  He also told her that she was being placed on a "5150 hold."  (*Id.*)  Plaintiff asserted that she did not want to go; that she wanted to inform her mother of what was happening; and that her daughter was home.  (*Id.*)  Defendants Henry and Canto refused to provide Plaintiff access to her home or to speak with her family.  (*Id.*)

Plaintiff then asked to speak to their supervisor, and Defendant Henry asked Defendant Canto to get Defendant Alvarez.  (*Id.*)  While waiting for Defendant Alvarez, Plaintiff stated that she did not consent to be taken to a medical facility and that they should remove themselves from her property.  (*Id.* at 5-6.)  Defendant Henry stated that he was executing his lawful duties by putting Plaintiff on an involuntary 5150 hold.  (*Id.* at 6.)  Once Defendant Alvarez arrived, he told Plaintiff that if she did not go willingly, she would be placed in handcuffs.  (*Id.*)  At that time, paramedics arrived with a stretcher.  (*Id.*)  Plaintiff's mother then exited the home and told Defendant Henry and Defendant Canto that Plaintiff was well.  (*Id.*)  Eventually, Defendants Alvarez and Henry grabbed Plaintiff's arms, forced them behind her back, and walked her to Defendant Henry's patrol

car. (*Id.*) They handcuffed Plaintiff's wrists and escorted her to the hospital. (*Id.*) Plaintiff alleges that, during the entire encounter, no defendant asked her whether: (1) she was a danger to herself or to others; (2) she was unable to provide for her basic personal needs for food, clothing, and shelter; or (3) she had been found mentally incompetent under Section 1370 of the California Penal Code. (*Id.*)

### B. Procedural Background

On June 9, 2021, Plaintiff filed a complaint asserting nine causes of action against Defendants. As against Defendants Henry, Canto, Alvarez, and Ceballos, Plaintiff alleges unlawful seizure under the Fourth Amendment and 42 U.S.C. § 1983 (Claim 1). Plaintiff also alleges *Monell* claims under 42 U.S.C. § 1983 (Claims 2 and 3) against Defendants City of Visalia and County of Tulare. Against Defendants Henry, Canto, and Alvarez, Plaintiff alleges tort claims, including a negligence claim (Claim 4), a false arrest claim (Claim 7), a battery claim (Claim 8), and intentional infliction of emotional distress claim (Claim 9). Plaintiff alleges disability discrimination under ADA Title II (Claims 5 and 6) against Defendants City of Visalia and County of Tulare. (*See* ECF No. 1.)

On August 4, 2021, County Defendants filed a motion to dismiss. (ECF No. 6.) On September 13, 2021, City Defendants filed a motion to dismiss, including a request for judicial notice. (ECF No. 12.) On September 23, 2021, Plaintiff filed an opposition to County Defendants' motion to dismiss, and County Defendants filed their reply, including a request for judicial notice, on September 30, 2021. (ECF Nos. 14, 15.) On October 5, 2021, Plaintiff filed an opposition to City Defendants' motion to dismiss, and City Defendants filed their reply on October 12, 2021. (ECF Nos. 16, 17.)

## II.   LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Though Rule 8(a) does not require detailed

1   factual allegations, a plaintiff is required to allege "enough facts to state a claim for relief that is

2   plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556

3   U.S. 662, 677-78 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content

4   that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

5   alleged." *Iqbal*, 556 U.S. at 678.  In determining whether a complaint states a claim on which relief

6   may be granted, the court accepts as true the allegations in the complaint and construes the

7   allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73

8   (1984).  It is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that

9   the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen.*

10  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

11  **III.   DISCUSSION**

12  **1.   Plaintiff sufficiently pleads that Defendant Ceballos participated in Plaintiff's seizure**

13  **(Claim 1).**

14      In this case, Plaintiff alleges Defendants, including Defendant Ceballos, deprived her of her

15  rights under the Fourth Amendment to the Constitution when she was allegedly unlawfully seized

16  on August 12, 2020.  Under the Fourth Amendment, a person has the right to be free from an

17  unreasonable seizure of her person.  U.S. Const. Amend. IV.  "[A] person 'subjects' another to the

18  deprivation of a constitutional right, within the meaning of section 1983 if he does an affirmative

19  act, participates in another's affirmative acts, or omits to perform an act which he is legally required

20  to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch.*

21  *Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).  A plaintiff must allege specific facts linking each

22  individual defendant to a § 1983 violation.  *Ortez v. Wash. Cnty., State of Or.*, 88 F.3d 804, 809

23  (9th Cir. 1996).  A defendant cannot be held liable "because of his membership in a group without

24  a showing of individual participation in the unlawful conduct." *Jones v. Williams*, 297 F.3d 930,

25  935 (9th Cir. 2002).  A plaintiff must establish the "integral participation" of the defendant in the

26  alleged constitutional violation.  *Id.*  While "integral participation" does not require that each

27  defendant's actions themselves rise to the level of constitutional violation, it does require "some

28  fundamental involvement in the conduct that allegedly caused the violation." *Blankenhorn v. City*

5

1    *of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007); *Boyd v. Benton County*, 374 F.3d 773, 780 (9th

2    Cir. 2004).

3        In their pending motion to dismiss, County Defendants argue that Plaintiff fails to allege any

4    individual action by Defendant Ceballos in Plaintiff's alleged detention and arrest.  (ECF No. 6-1

5    at 9.)  They contend that Plaintiff only alleges that Defendant Ceballos (1) communicated concerns

6    as to Plaintiff's mental health to VPD officers after reviewing her complaints, (2) responded to, and

7    stood by, Plaintiff's residence at the direction of law enforcement to assist in getting Plaintiff to the

8    hospital for a proper assessment of her mental health needs by a qualified medical professional, (3)

9    communicated his desire to help her obtain a mental health assessment, and (4) communicated his

10   willingness to return in the afternoon at her request and to give her a ride to the hospital to be

11   assessed and discharged within a couple of hours.  (*Id.*)  County Defendants assert that Plaintiff's

12   5150 detention was a decision only the VPD officers made.  They argue that Plaintiff lumped

13   Defendant Ceballos into the VPD officers' actions and that group pleading does not provide

14   Defendant Ceballos fair notice of the claims against him.  (*Id.*)

15       In response, Plaintiff argues that Defendant Ceballos participated in her arrest.  (ECF No. 14 at

16   4.)  Plaintiff contends that there is no requirement that all actors must equally contribute to the

17   seizure of a defendant to constitute unlawful conduct.  (*Id.* at 5.)  Rather, actors may be liable for

18   mere "integral participation" in the unlawful conduct.  *See Chuman v. Wright*, 76 F.3d 292, 294

19   (9th Cir. 1996) (citing *Melear v. Spears*, 862 F.2d 1177 (5th Cir. 1989)).  In *Melear*, the court held

20   that an officer may be held liable under § 1983 and be considered "integral" to the search, even

21   though he merely remained armed during the search.  *Id.* at 1186.

22       Defendants rely on *Boyd v. Benton* County, 374 F.3d 773 (9th Cir. 2004).  There, the court held

23   that each defendant may be held liable under § 1983 for the unlawful search operation.  *Id.* at 780.

24   The officers in *Boyd* employed a flash-bang grenade, which is a light and sound diversionary device

25   designed to emit a brilliant light and loud noise upon detonation.  *Id.* at 776.  Some of the officers

26   argue that they were not "integral participants" in the search because they were not the ones who

27   deployed the flash-bang.  *Id.* at 778.  The court disagreed because the officers stood armed behind

28   the officer who deployed the flash-bang; the flash-bang was a part of the search operation; and

6

1  every officer was aware of the decision to use the flash-bang and did not object to it.  *Id.* at 780.

2      Similar to *Melear* and *Boyd*, the Court finds that Plaintiff sufficiently alleges that Defendant

3  Ceballos was an integral participant in her seizure.  Defendant Ceballos reviewed Plaintiff's

4  complaints, and he believed Plaintiff was gravely disabled, which met the criteria for a 5150 hold.

5  (ECF No. 1 at 3.)  Defendant Ceballos advised Officer Henry that he would like to meet Plaintiff

6  and transport her to the hospital for a medical clearance.  (*Id.*)  After discussing with Defendant

7  Ceballos how they planned to contact Plaintiff, Officer Henry and Defendant Ceballos made contact

8  at Plaintiff's residence.  (*Id.*)  Defendant Ceballos greeted Plaintiff and identified himself with his

9  business card.  (*Id.* at 4.)  When Officer Henry returned to Plaintiff's residence, Defendant Ceballos

10  accompanied him and remained in the front yard as Officer Henry rang Plaintiff's doorbell.[1]  (*Id.*

11  at 5.)  The Court finds that Plaintiff alleges specific facts linking Defendant Ceballos to the alleged

12  § 1983 violation.

13      The Court recognizes that Plaintiff does not explicitly allege that Defendant Ceballos knew of

14  the decision to take Plaintiff into custody involuntarily if she refused to go to the hospital on her

15  own.  Rather, Plaintiff alleges that once Officer Henry left Plaintiff's residence the first time, he

16  informed Defendants Canto and Alvarez, and Lieutenant Fahoum of his decision to involuntarily

17  detain Plaintiff if she refused to go to the hospital.  (*Id.* at 5.)  However, as a mental health crisis

18  service worker for Tulare County, the Court finds that Defendant Ceballos should have understood

---

19

20  [1] "In determining the propriety of a Rule 12(b)(6) dismissal, a court may *not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's

21  motion to dismiss." *Schneider v. Cal. Dept. of Corrs.*, 151 F.3d 1194, 1197 (9th Cir. 1998). "Facts raised for the first time in plaintiff's opposition papers should be considered by the court in

22  determining whether to grant leave to amend or to dismiss the complaint with or without prejudice." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing *Orion Tire Corp. v. Goodyear*

23  *Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001)).

24  Here, Plaintiff concedes that new factual allegations are mentioned in her opposition.  Plaintiff

25  notes that Defendant Ceballos filled out an application for 5150 assessment, where he attested: "My name is Ernie Ceballos. I am a (peace officer/mental health professional) with (name of agency).

26  You are not under arrest, but I am taking you for examination by mental health professionals at (name of facility)."  Plaintiff attached the application as an Exhibit.  The Court finds that these

27  newly alleged facts are only considered for purposes of granting leave to amend.  However, without this exhibit, Plaintiff still sufficiently pleads that Defendant Ceballos was an integral participant in

28  her alleged seizure.

that § 5150 holds are detentions for *involuntary* treatment.  *See Bragg v. Valdez*, 111 Cal.App.4th 421, 429 (2003) ("A person who is dangerous or gravely disabled due to a mental disorder may be detained for involuntary treatment."); *In re L. L.*, 39 Cal.App.3d 205, 209 (1974) ("An involuntary detention or commitment . . . may be had or ordered only where the person, 'as a result of a mental disorder, is a danger to others, or to himself, or gravely disabled, . . . .'").  Because Defendant Ceballos advised Defendant Henry that Plaintiff was gravely disabled and met the criteria of a 5150 hold, and that Defendant Ceballos was physically present at Plaintiff's seizure, the Court finds that Plaintiff sufficiently pleads that Defendant Ceballos was an integral participant in the alleged seizure.  Therefore, the Court denies County Defendants' motion to dismiss Claim 1 against Defendant Ceballos.

**2.  Plaintiff sufficiently pleads that she suffered a constitutional injury (Claims 1 and 2).**

California Welfare and Institution Code § 5150(a) provides in part that "[w]hen a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer may . . . upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention." Cal. Welf. & Inst. Code § 5150(a) (West 2022).  "Gravely disabled" is defined as follows:

> (A) A condition in which a person, as a result of a mental health disorder, is unable to provide for his or her basic personal needs for food, clothing, or shelter.
> (B) A condition in which a person, has been found mentally incompetent under Section 1370 of the Penal Code and all of the following facts exist . . .

Cal. Welf. & Inst. Code § 5008(h)(1) (West 2022).

The seizure of a suspected mentally ill person for psychiatric evaluation is "analogous to a criminal arrest and must therefore be supported by probable cause." *Maag v. Wessler*, 960 F.2d 773, 775 (9th Cir. 1991).  To constitute probable cause under § 5150, the facts known to a peace officer should "lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself or is gravely disabled." *People v. Triplett*, 144 Cal.App.3d 283, 287-88 (1983); *see* Cal. Welf. & Inst. Code § 5150.05(a) (West 2022).  "The officer must be able to point to specific and articulable facts

1   which, taken together with rational inferences from those facts, reasonably warrant his or her belief

2   or suspicion." *Triplett*, 144 Cal.App.3d at 288.  Probable cause "must be decided on the facts and

3   circumstances presented to the officer *at the time of detention*," and the officer may "tak[e] into

4   account the past conduct, character, and reputation of the detainee." *Id.* (emphasis added).  An

5   officer is "not required to make a medical diagnosis of mental disorder," but "as a lay person, can

6   articulate behavioral symptoms of mental disorder, either temporary or prolonged." *Id.* "[A]ll-

7   encompassing lay definition of mental disorder is difficult if not impossible to formulate." *Id.*

8   Therefore, a mental disorder may exist "if a person's thought processes, as evidenced by words or

9   actions or emotional affect, are bizarre or inappropriate for the circumstances." *Id.*

10      In their pending motion to dismiss, City Defendants argue that Plaintiff suffered no

11   constitutional injury because they had probable cause to take Plaintiff into custody involuntarily on

12   a 5150 hold.  (ECF No. 12 at 16.)  Prior to contacting Plaintiff, Defendant Henry reviewed

13   Plaintiff's 45 reports for harassment and stalking that she submitted to the VPD.  City Defendants

14   argue that the reports were riddled with paranoia and delusions.[2]  In her complaint, Plaintiff alleges

---

15   [2] Federal courts may grant judicial notice of facts that "can be accurately and readily determined

16   from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  For Rule
     12(b)(6) motions to dismiss, under the "incorporation by reference" doctrine, a court may take into

17   account documents whose contents are alleged in a complaint and whose authenticity no party
     questions, but which are not physically attached to the plaintiff's pleading. *Davis v. HSBC Bank*

18   *Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th
     Cir. 2005).  Such documents may be treated as a part of the complaint and the contents of those

19   documents are true for purposes of a motion to dismiss under Rule 12(b)(6). *Id.*

20

21   In their request for judicial notice, City Defendants request that the Court take judicial notice of the
     Visalia Police Department Incident Report No. 20-068188 for the following reasons: (1) the

22   document is publicly available; (2) it is a business record of the City of Visalia, which is subject to
     disclosure under the California Public Records Act, Cal. Gov't Code §§ 6250, et. seq.; (3) it is

23   incorporated by reference into Plaintiff's Complaint; (4) it is central to the allegations of the
     Complaint; and (5) Plaintiff cannot reasonably dispute the document's authenticity.  (ECF No. 12-

24   3 at 3.)  City Defendants attached a declaration of Lisa Brown, the custodian of records for the
     VPD, in support of their motion to dismiss and request.  (ECF No. 12-2 at 1.)  Ms. Brown declares

25   that the incident report attached to the motion is a true and correct copy of the business record
     maintained by VPD.  (*Id.*)  Based on the report, Defendant asserts that several of Plaintiff's

26   allegations are factually incorrect and that she had omitted pertinent and articulable facts.  (*Id.*)
     City Defendants argue that application of the incorporation by reference doctrine is warranted

27   because Plaintiff selectively quotes only portions of documents on which her claim is based.  (ECF
     No. 12 at 12.)  In their reply to Plaintiff's opposition, County Defendants request for judicial notice

28

1  that her car's dashboard screen turned red when she's being stalked or harassed.  (ECF No. 1 at 3.)

2  According to Defendant Henry, the complaints and self-admitted torment had occurred over the

3  course of a year, and out of concern for Plaintiff's quality of life, Defendant Henry contacted Tulare

4  County Crisis to review her case. (ECF No. 12-2 at 6.)  Upon review of Plaintiff's case, Defendant

5  Ceballos indicated that he wanted to further investigate Plaintiff because he believed she may be

6  gravely disabled, meeting the criteria for a 5150 hold.  (ECF No. 12 at 16.)  Defendant Ceballos

7  advised Defendant Henry of bringing Plaintiff to the hospital to assess her mental health.  (*Id.*)

8  While contacting Plaintiff, Defendant Henry discovered that Plaintiff believed her neighbor mowed

9  her yard to harass her.  (ECF No. 12-2 at 6.)  When asked how she knew the difference between a

10  randomly passing police car on a public road and one who was stalking her, Defendants argue that

11  she provided an irrational explanation, believing that everyone was "in on it," and trying to stalk

12  and harass her.  (*Id.* at 7.)  When the ambulance arrived at Plaintiff's residence, she became upset

13  and mentioned that they have stalked her as well.  (*Id.*)  Therefore, Defendants argue that they had

14  the requisite probable cause to take Plaintiff into custody involuntarily on a 5150 hold.  (ECF No.

15  12 at 16.)

16      Here, the Court finds that Plaintiff sufficiently pleads that Defendants Henry, Alvarez, Canto,

17  and Ceballos lacked the probable cause for a § 5150 hold and a plausible violation of her Fourth

18

19  of the official filings and orders in Tulare County Superior Court Case Number VCU276991,
    *Samreen Riaz v. Altura Centers for Health*, to establish that Plaintiff was mentally disordered and
    a danger to herself or gravely disabled.  (ECF No. 15-1.)

20

21  The Court grants City Defendants' request for judicial notice to the extent that the paragraphs are
    mentioned and relied upon in this Court's analysis.  The Court grants judicial notice of paragraphs

22  2, 9, 10, and 22 of the Visalia Police Department Incident Report No. 20-068188 because the
    document is publicly available and incorporated by reference into Plaintiff's complaint.  The Court

23  denies County Defendants' request for judicial notice of the official filings and orders in Tulare
    County Superior Court Case Number VCU276991, *Samreen Riaz v. Altura Centers for Health*.

24  (*See* ECF No. 15 at 1.)  The reports, the three attorneys' declarations, a forensic psychologist
    confirmation, and the Tulare County Superior Court's orders that confirmed that Plaintiff was

25  mentally disordered and a danger to herself or gravely disabled occurred *after* Defendants
    determined the alleged probable cause to detain Plaintiff involuntarily under a 5150 hold.  Probable

26  cause must be decided on the facts and circumstances presented to the officer *at the time of

27  detention.  People v. Triplett*, 144 Cal.App.3d 283, 288 (1983).  Therefore, City Defendants may
    not rely on the findings related to *Samreen Riaz v. Altura Centers for Health* to establish probable

28  cause.

Amendment right to not be unlawfully seized.  In her complaint, Plaintiff alleges that she was casually dressed and was well kept when Officer Henry initially greeted her on August 12, 2020. (ECF No. 1 at 4.)  She further alleges that she was not a threat to herself or anyone else at the time of her detention.  "[Plaintiff] was well dressed, well-nourished and was the primary care for her daughter.  [Plaintiff] also was responsible for looking after her elderly mother." (*Id.* at 10.)  Plaintiff notably alleges that, during the entire encounter, no defendant asked her (1) whether she was a danger to herself or to others; (2) whether she was unable to provide for her basic personal needs for food, clothing, and shelter; or (3) whether she had been found mentally incompetent under Section 1370 of the California Penal Code.  (ECF No. 1 at 5-6.)  Based on the complaint, the Court finds that she was not "gravely disabled" as defined by California Welfare and Institution Code § 5008(h)(1)(A).

City Defendants fail to cite to any authority that supports that they had the requisite probable cause to detain Plaintiff.  There are no facts that indicate that she was a harm to herself or others. When government actors learn of suicidal threats or attempts, they have the requisite probable cause under § 5150.  *See, e.g.*, *Bias v. Moynihan*, 508 F.3d 1212 (9th Cir. 2007); *Julian v. Mission Cmty. Hosp.*, 11 Cal.App.5th 360 (2017); *People v. Triplett*, 144 Cal.App.3d 283 (1983); (ECF No. 16 at 6.)  Because Plaintiff did not threaten suicide or had attempted suicide, the Court finds that Plaintiff sufficiently alleges that Defendants lacked probable cause to detain her under § 5150.  The Court is persuaded that Defendants expressing the possibility of Plaintiff harming herself or others, not that she is, in fact, going to harm herself or others, does not establish probable cause.  If law enforcement can detain someone merely because they perceive that the individual has a mental illness, that would permit unwieldy power under § 5150.  Therefore, the Court denies City Defendants' motion to dismiss Claims 1 and 2.

**3. Because Plaintiff sufficiently pleads a constitutional violation, Plaintiff sufficiently pleads that Defendants Henry, Canto, Alvarez, and Ceballos are not entitled to qualified immunity (Claim 1).**

Qualified immunity protects officials who reasonably believe that they are acting lawfully in carrying out their duties and "gives government officials breathing room to make reasonable but

mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011); *Mackinney v. Nieslen*, 69 F.3d 1002, 1005 (9th Cir. 1995). "[G]overnment officials performing discretionary functions are generally granted a qualified immunity and are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Broam v. Bogan*, 320 F.3d 1023, 1031 (9th Cir. 2003) (citation and internal quotations omitted). Government officials must have "fair and clear warning" that their conduct is unlawful. *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001). Once a defendant has raised qualified immunity as a defense to a claim, a plaintiff must show "(1) that the right was violated; and (2) that the right was clearly established at the time of the alleged misconduct." *Isayeva v. Sacramento Sherriff's Dep't*, 872 F.3d 938, 946 (9th Cir. 2017).

In their motion to dismiss, County Defendants argue that Defendant Ceballos is entitled to qualified immunity. (ECF No. 6-1 at 10.) They concede that Plaintiff has clearly established her right to be free from detention without probable cause. (*Id.* at 11.) Thus, the main issue is whether that right was violated. (*Id.*) Based on Plaintiff's forty-five reports of stalking and harassment to law enforcement, Defendants argue that it was reasonable for Defendant Ceballos to conclude that Plaintiff might be gravely disabled due to a mental disorder. (*Id.*) Upon review of Plaintiff's case, Defendant Ceballos determined that she met the criteria for a § 5150 hold. (*Id.*) Once VPD officers visited Plaintiff's home and personally interacted with her, they decided that if Plaintiff refused to go to the hospital, they would take her into custody involuntarily. (*Id.*) Defendants assert that a reasonable crisis member like Defendant Ceballos could have determined that Plaintiff presented a danger to others, herself, or was gravely disabled. (*Id.* at 11-12.) Similarly, City Defendants argue that, based on the totality of the factual information known to them, a reasonable officer could have believed taking Plaintiff into custody on a 5150 hold would not violate her constitutional rights. (ECF No. 12 at 18.) In response, Plaintiff argues that she is neither gravely disabled nor mentally incompetent, indicating that Defendants Henry, Canto, Alvarez, and Ceballos lacked probable cause to seize her lawfully. (ECF Nos. 14 at 6; 16 at 7-8.)

Because Plaintiff sufficiently pleads a constitutional violation, the Court denies Defendants'

1   motions to dismiss Claim 1 based upon qualified immunity.  First, the Court agrees that Plaintiff's

2   Fourth Amendment right to be free from unreasonable seizures was clearly established at the time

3   of the alleged misconduct.  U.S. Const. amend. IV.  Second, Plaintiff pleads that Defendants Henry,

4   Canto, Alvarez, and Ceballos lacked the probable cause to detain her under a 5150 hold.  Based on

5   Plaintiff's complaint, Defendants did not establish that she was a harm to herself or others, or that

6   she was gravely disabled.  Thus, Plaintiff sufficiently pleads that her right has been violated,

7   undercutting Defendants' defense of qualified immunity.  Therefore, the Court denies Defendants'

8   motion to dismiss Claim 1.

9       **4.  Plaintiff sufficiently pleads *Monell* claims against the County of Tulare and the City**

10          **of Visalia (Claims 2 and 3).**

11      Title 42 U.S.C. § 1983 provides a cause of action through which individuals may vindicate "the

12   deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the

13   United States.  *See Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).  To establish a §

14   1983 claim for municipal liability, Plaintiff must show: (1) that he possessed a constitutional right

15   of which he was deprived; (2) that the County had an official policy; (3) that this policy amounts

16   to deliberate indifference to the Plaintiff's constitutional right; and (4) that the policy is the moving

17   force behind the constitutional violation.  *Oviatt By and Through Waugh v. Pearce*, 954 F.2d 1470,

18   1474 (9th Cir. 1992).  Deliberate indifference requires proof that a municipal actor disregarded a

19   known or obvious consequence of his action.  *Id.* at 410.  To show ratification, Plaintiff must assert

20   that the authorized policymaker approved a subordinate's decision and the basis for it.  *City of St.*

21   *Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

22      A claim of inadequate training is only cognizable under § 1983 where the County's failure to

23   train reflects deliberate indifference to the constitutional rights of its inhabitants.  *City of Canton v.*

24   *Harris*, 489 U.S. 378, 388 (1989); *see also Young v. City of Visalia*, 687 F.Supp.2d 1141, 1149

25   (E.D. Cal. 2009).  A pattern of tortious conduct or, without showing a pattern of constitutional

26   violations, a highly predictable violation of federal rights may support proving a failure-to-train

27   claim.  *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006).  While inadequacy of training

28   may constitute a "policy" giving rise to *Monell* liability, "adequately trained [employees]

13

1   occasionally make mistakes; the fact that they do says little about the training program or the legal

2   basis for holding the [municipality] liable." *City of Canton*, 489 U.S. at 391.  Plaintiff must allege

3   facts that Defendants disregarded the known or obvious consequence that a particular omission in

4   their training program would cause municipal employees to violate citizens' constitutional rights.

5   *Praprotnik*, 485 U.S. at 127 (citation and internal quotation marks omitted).  A claim of municipal

6   liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on

7   nothing more than a bare allegation that the individual's officers' conduct conformed to official

8   policy, custom or practice.  *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 636 (9th Cir.

9   2012).

10      In their motion to dismiss, County Defendants argue that Plaintiff fails to establish that the

11   County's policy of failure to train amounts to deliberate indifference to her constitutional right and

12   that the policy is the moving force behind the constitutional violation.  (ECF No. 6-1 at 12-14.)

13   More specifically, County Defendants argue that Plaintiff ambiguously asserts deliberate

14   indifference.  (*Id.* at 13.)  They also assert that Plaintiff does not sufficiently plead ratification

15   because the complaint does not demonstrate that the County authorized or approved a subordinate's

16   decision.  (*Id.*)  Similarly, Defendant City of Visalia argues that Plaintiff failed to allege any facts

17   or cite to any legal precedent to support that City should be found legally responsible for the actions

18   of the Visalia Police Department.  (ECF No. 12 at 19.)

19      In response, Plaintiff argues that Tulare County officials and City of Visalia officials knew or

20   reasonably should have known about the unconstitutional acts its own officials, including City

21   Defendants, committed.  (ECF No. 14 at 7; 1 at 7.)  Plaintiff argues that the City of Visalia was

22   deliberately indifferent about the insufficient training of mental health crisis personnel.  Defendants

23   Canto and Alvarez supporting Defendant Henry's conclusion that Plaintiff was gravely disabled

24   allegedly constitutes deliberate indifference.  (ECF No. 16 at 9.)  Therefore, Plaintiff argues that

25   she has met the pleading requirements for a *Monell* claim against the City and the County.

26      City Defendants rely on *Long v. County of Los Angeles*, 442 F.3d 1178 (9th Cir. 2006).  There,

27   the court reviewed and reversed the trial court's grant of the defendant's motion for summary

28   judgment with respect to a § 1983 claim.  *Id.* at 1184.  Relying on expert declarations and other

1   evidence, the court found a triable issue of fact and held that a county's failure adequately to train

2   its employees to implement a facially valid policy can amount to deliberate indifference.  *Id.* at

3   1188-89.  Unlike *Long*, the Court reviews motions to dismiss, not a motion for summary judgment.

4   The parties have not yet had the opportunity to conduct discovery, which precludes them from

5   obtaining the evidence to support or contradict Plaintiff's *Monell* claim.

6       Defendants also rely on *Young v. City of Visalia*, 687 F.Supp.2d 1141 (E.D. Cal. 2009), to

7   illustrate the pleading standard for *Monell* claims in light of the heightened pleading standard set

8   in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *Young*, 687 F.Supp.2d at 1149.  There, the court largely

9   considers the Ninth Circuit's decision in *Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001).  *Young*,

10  687 F.Supp.2d at 1149.  The *Young* court found that the allegations in *Lee* "identified the challenged

11  policy/custom, explained how the policy/custom was deficient, explained how the policy/custom

12  caused the plaintiff harm, and reflected how the policy/custom amounted to deliberate

13  indifference," satisfying the pleading standard.  *Id.* at 1159.

14      As in *Lee*, the Court finds that Plaintiff satisfies the pleading standard for *Monell* claims.

15  Plaintiff identifies the challenged policy: the Visalia Police Department's continuing pattern or

16  practice of misconduct and/or civil rights violations, and the County of Tulare's continuing pattern

17  and practice of misconduct and/or civil rights violations by health crisis personnel.  (ECF No. 1 at

18  7-9.)  Plaintiff explains how the policies were deficient and caused her harm: the Visalia Police

19  Department and the County of Tulare's policies resulted in the deprivation of Plaintiff's

20  constitutional rights, including, but not limited to, the right to not be deprived of life, liberty, or

21  property without due process of law, and the right to be free from unreasonable searches and

22  seizures.  (*Id.*)  The claims also reflected on how the policies allegedly amounted to deliberate

23  indifference, alleging that Defendants City and County ratified and encouraged their officials to

24  pursue a course of misconduct.  (*Id.*)

25      Moreover, *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631 (9th Cir. 2012), is

26  applicable.  *Id.* at 636.  At the motion to dismiss stage, Plaintiff is not required to plead in detail the

27  policy or custom that provides the basis of a *Monell* claim.  In her complaint, Plaintiff alleges that

28  the County of Tulare and City of Visalia officials knew or should have known about the alleged

1    unconstitutional acts their own subordinates committed, including Defendants Henry, Canto,

2    Alvarez, and Ceballos.   (ECF No. 1 at 7.)   The Court finds that this satisfies the pleading

3    requirement set out in *AE ex rel. Hernandez*, which requires no more than a bare allegation that the

4    government's conduct conformed to a government policy or custom.  666 F.3d at 636-37.  Although

5    they may be bare allegations, such are sufficient to withstand a motion to dismiss.  Therefore, the

6    Court denies the County of Tulare's and the City of Visalia's motions to dismiss Claims 2 and 3.

7          **5.   Plaintiff fails adequately to allege a discrimination claim against the County of Tulare**

8                **and the City of Visalia (Claims 5 and 6).**

9          To state a claim under the ADA, Plaintiff must allege: "(1) [s]he is an individual with a

10   disability; (2) [s]he is otherwise qualified to participate in or receive the benefit of some public

11   entity's services, programs, or activities; (3) [s]he was either excluded from participation in or

12   denied the benefits of the public entity's services, programs, or activities, or was otherwise

13   discriminated against by the public entity; and (4) such exclusion, denial of benefits, or

14   discrimination was by reason of [her] disability." *McGary v. City of Portland*, 386 F.3d 1259, 1265

15   (9th Cir. 2004).   Under the ADA, a "disability" is: (a) a physical or mental impairment that

16   substantially limits one or more of the major life activities of such individual, (b) a record of such

17   an impairment, or (c) being regarded as having such an impairment.  42 U.S.C. § 12102(1).

18         The court must consider whether Plaintiff's allegations show that she has been denied

19   "meaningful access" to Defendants' services, programs, or activities.  *K.M. ex rel. Bright v. Tustin*

20   *Unified Sch. Dist.*, 725 F.3d 1088, 1102 (9th Cir. 2013).  The ADA does not define what constitutes

21   "services, programs, or activities of a public entity." (ECF No. 6-1 at 15.)  Inadequate treatment of

22   a disability is not protected under the ADA.  *Atayde v. Napa State Hosp.*, 255 F.Supp.3d 978, 1001

23   (E.D. Cal. 2017) (citing *Simmons v. Navajo Cnty.*, 609 F.3d 1011, 1022 (9th Cir. 2010)).  Whether

24   a particular public function is covered by Title II of the ADA turns "not so much on whether a

25   particular public function can technically be characterized as a service, program, or activity, but

26   whether it is 'a normal function of a governmental entity.'"  *Barden v. City of Sacramento*, 292

27   F.3d 1073, 1076 (9th Cir. 2002).

28         In their pending motion to dismiss, County Defendants argue that Plaintiff fails to state a

                                                    16

discrimination claim against the County of Tulare for two reasons.  (ECF No. 6-1 at 14.)  First, Defendants argue that Plaintiff fails to adequately allege a disability under the ADA.  (*Id.* at 16.)  They find that Plaintiff broadly refers to suffering from paranoia but does not allege her disability with some factual specificity.  (ECF No. 6-1 at 16.)  Second, Defendants argue that Plaintiff does not sufficiently allege what benefits of public services, programs, or activities that she was denied because of her disability.  (ECF No. 6-1 at 17.)  Defendants assert that Plaintiff challenges the adequacy of treatment for her disability, rather than discrimination because of her disability.  (*Id.*)

Similarly, City Defendants argue that Plaintiff fails to allege facts sufficient to establish that she is an individual with a disability.  (ECF No. 12 at 22.)  Defendants argue that Plaintiff does not allege facts to support how City of Visalia police officers' training inadequately prepared them to deal with a mentally impaired person, particularly those suffering from paranoia.  (*Id.*)  Therefore, Defendants request that the Court dismiss Plaintiff's discrimination claim against the City of Visalia.

For the first time in her opposition, Plaintiff argues that she suffers from paranoia that substantially limits her ability to socialize and work.[3]  (ECF No. 14 at 8.)  She states that she suffered from paranoia, which "causes one to experience a pattern of distrust and suspiciousness" and "impacts [her] ability to socialize in many different setting[s] including work."  (ECF Nos. 14 at 8, 16 at 10.)  Plaintiff also argues that there is a record of her impairment through her police reports and complaints.  (*Id.*)  In addition, Plaintiff contends that failing to respond reasonably to Plaintiff's mental impairments and the lack of sufficient training constitute "services, programs, or activities" under the ADA.  (ECF No. 14 at 8.)  Plaintiff cites to *Thompson v. Davis*, 295 F.3d 890 (9th Cir. 2002), for support.  There, the court held that the ADA applies to arrests, where "the weight of authority on the applicability of the ADA to arrests suggests that a state's substantive decision-making processes in the criminal law context are not immune from the anti-discrimination guarantees of federal statutory law."  *Thompson*, 295 F.3d at 897.  Notably, the Supreme Court

---

[3] The Court considers Plaintiff's newly alleged facts in her opposition only with respect to granting leave to amend.  *See Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003) (citing *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001)); *Schneider v. Cal. Dept' of Corr.*, 151 F.3d 1194, 1997 n.1 (9th Cir. 1998).

1   discredited the reasoning that an arrest was not a "program or activity" merely because an arrest is

2   not voluntary.  *Pa. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 211 (1998).

3         Here, the Court finds that Plaintiff fails to allege a disability under the ADA.  A chronic

4   condition, alone, is not enough to create a disability.  *See Smith v. Walgreens Boots Alliance, Inc.*,

5   No. 20-CV-05451-CRB, 2021 WL 391308, at *5 (N.D. Cal. Feb 3. 2021) (citing *Hale v. King*, 642

6   F.3d 492, 501 (5th Cir. 2011)).  Plaintiff does not demonstrate that her record of mental impairment

7   substantially limits one or more of the major life activities.  *See Hale v. King*, 642 F.3d 492, 501

8   (5th Cir. 2011) (holding that failure to explain the alleged disability's impact on a major life activity

9   fails to amount to a disability under the ADA).  Although Plaintiff argues that the police reports

10  and complaints constitute a record of her mental impairment, Plaintiff fails to allege in her

11  complaint that her paranoia instills distrust and suspicion in her, impacting her ability to socialize

12  and work.  Rather, for the first time in her opposition, Plaintiff contends that her paranoia limits

13  one or more of her major life activities.  As a result, the Court will grant leave to amend Plaintiff's

14  discrimination claim.

15        The Court further finds that Plaintiff's detention, where Defendants allegedly failed to

16  reasonably respond to her mental impairment and lacked adequate training, may be considered a

17  "program or activity" under the ADA.  Similar to *Thompson*, a seizure under § 5150 is analogous

18  to an arrest, where both require probable cause and substantive decision-making processes by peace

19  officers.  A § 5150 hold, thus, may be a program or activity that is subject to the ADA.  Nonetheless,

20  Plaintiff fails to plead a plausible disability claim under the ADA.  Furthermore, City Defendants

21  fail to cite to any authority requiring a plaintiff to allege facts with specificity that a municipality's

22  training program inadequately prepared them to deal with a mentally impaired person, particularly

23  those suffering from paranoia.[4]  Therefore, the Court grants County Defendants' motion to dismiss

24  Claim 6 and City Defendants' motion to dismiss Claim 5 with leave to amend.

---

25  [4] In their motion to dismiss, City Defendants argue that "[a] party pleading a disability under ADA

26  must do so with some factual specificity," citing to *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056,
    1058 (9th Cir. 2007), for support.  (ECF No. 12-1 at 23.)  Nowhere in *O'Guinn* does the court hold

27  that disability claims under the ADA, particularly the service, program, or activity at issue, must
    be alleged with some factual specificity.  Accordingly, the Court finds that Plaintiff sufficiently

28  alleges that the City of Visalia's training program is subject to the ADA.

**6. Because Plaintiff sufficiently pleads that Defendants Henry, Canto, and Alvarez lacked probable cause for her seizure, Plaintiff's state law claims are not barred under California law (Claims 4, 7, 8, 9).**

California Welfare and Institutions Code § 5278 provides that "[i]ndividuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) . . . shall not be held either criminally or civilly liable for exercising this authority in accordance with the law." Cal. Welf. & Inst. Code § 5278 (West 2022). A police officer with the requisite probable cause to detain an individual under § 5150 is immune under § 5278 from state law claims for assault, battery, false arrest, illegal imprisonment, and intentional infliction of emotional distress. *Bias v. Moynihan*, 508 F.3d 1212, 1221 (9th Cir. 2007). "[T]he scope of section 5278 immunity extends to claims based on facts that are inherent in an involuntary detention pursuant to section 5150. If there is probable cause for the detention, the statute therefore provides immunity for the decision to detain as well as for the detention and its inherent attributes, including the fact that the patient must necessarily be evaluated and treated without consent." *Jacobs v. Grossmont Hosp.*, 108 Cal.App.4th 69, 78 (2003). Section 5278, however, does not confer blanket immunity, and does not extend to other negligent acts, intentional torts, or criminal wrongs committed during the course of the detention, evaluation, or treatment. *Id.* at 78-79.

In their motion to dismiss, City Defendants argue that these claims are barred under California law. (ECF No. 12 at 23.) Defendants contend that they had the requisite probable cause to take Plaintiff into custody on an involuntary 5150 hold and should enjoy the immunity from civil liability for claims that are based on circumstances inherent in the detention. (*Id.* at 24.)

Because Plaintiff sufficiently pleads that Defendants Henry, Canto, and Alvarez lacked probable cause to detain her under § 5150, Plaintiff's state law claims are not barred under California law. Therefore, the Court denies City Defendants' motion to dismiss claims 4, 7, 8, and 9.

**7. The Court grants Plaintiff leave to amend her complaint.**

Generally, "[c]ourts are free to grant a party leave to amend whenever 'justice so requires,' and requests for leave should be granted with 'extreme liberality.'" *Moss v. U.S. Secret Serv.*, 572 F.3d

19

962, 972 (9th Cir. 2009).  There are several factors a district court considers when deciding whether to grant leave to amend, including: undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by previously allowed amendments, undue prejudice to the opposing party, and futility.  *Brown v. Stored Value Cards, Inc.*, 953 F.3d 567, 574 (9th Cir. 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Of the *Foman* factors, the court should particularly consider prejudice to the opposing party.  *Id.*; *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Applying the second and fifth *Foman* factors to this case, the Court finds that Plaintiff has not acted in bad faith and that it would not be futile to grant another opportunity to cure deficiencies in the complaint.  Regarding the third factor, Plaintiff did not file an amended complaint.  For future motions, the Court directs the parties to meet and confer prior to filing any motions, pursuant to the Court's Standing Order in Civil Actions.  E.D. Cal. S.O. J. de Alba at 2.  Additionally, the parties must include in their motions "a declaration that the parties exhausted meet and confer efforts, with a very brief summary of said efforts."  *Id.*  Finally, considering the first and fourth factors, the Court recognizes that this matter was filed more than a year ago, and that Defendants filed their motions to dismiss in 2021.  The substantial delay in this case has likely prejudiced both parties, but that delay is attributable to the Court alone.  The Court cannot permit its overcrowded docket to result in the dismissal, with prejudice, of potentially meritorious claims.  Plaintiff will, therefore, be granted leave to amend the complaint to address the deficiencies noted in this order.

**IV.**    **CONCLUSION AND ORDER**

Accordingly,

1.  County Defendants' motion to dismiss Claim 1 against Defendant Ceballos and Claim 2 against the County of Tulare is DENIED;

2.  County Defendants' motion to dismiss Claim 6 against the County of Tulare is GRANTED;

3.  County Defendants' request for judicial notice, (ECF No. 15-1), is DENIED in its entirety;

///

4. City Defendants' motion to dismiss Claim 1 and 2 against the City of Visalia, Defendant Henry, Defendant Canto, and Defendant Alvarez, Claim 3 against the City of Visalia, and Claims 4, 7, 8 and 9 is DENIED;

5. City Defendants' motion to dismiss Claim 5 against the City of Visalia is GRANTED;

6. City Defendants' request for judicial notice, (ECF No. 12-3), is GRANTED only with respect to paragraphs 2, 9, 10, and 22 of the Visalia Police Department Incident Report No. 20-068188; and

7. Plaintiff is granted leave to amend her complaint within twenty-one (21) days of service of this order.


IT IS SO ORDERED.

Dated:   January 3, 2023

_____
UNITED STATES DISTRICT JUDGE

21