1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    SAMREEN RIAZ                              No.  1:21-cv-00911-KES-SKO

12                    Plaintiff,               ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS' JOINT
13           v.                                MOTION IN LIMINE AS TO PLAINTIFF'S
                                               EXPERT DR. JULIE ARMSTRONG
14    NATHAN HENRY, et al.,
                                               Doc. 54
15                    Defendants.

16

17          This is a civil rights and state tort action concerning defendants' detention of plaintiff

18   Samreen Riaz on August 12, 2020, pursuant to California Welfare & Institutions Code § 5150.

19   This action is set for trial on plaintiff's claims for: (1) unlawful seizure, detention, and

20   confinement under the Fourth Amendment, in violation of 42 U.S.C. § 1983, against defendants

21   Henry, Canto, Alvarez, and Ceballos; (2 and 3) *Monell* liability under 42 U.S.C. § 1983 against

22   defendants City of Visalia and County of Tulare; and (4) negligence, (5) false arrest, (6) battery,

23   and (7) intentional infliction of emotional distress against defendants Henry, Canto, and Alvarez.

24          The Court held oral argument on defendants' joint motions in limine on March 17, 2025.

25   Docs. 54, 63.  The Court took under submission defendants' motion in limine to exclude the

26   testimony of plaintiff's expert witness, Dr. Julie Armstrong.[1]  *See* Doc. 63.  For the reasons set

27   _____

[1] The Court's rulings on the remaining motions in limine were noted on the record at the hearing.
28   *See* Doc. 63.

                                                    1

forth below, defendants' motion in limine to exclude Dr. Armstrong's testimony is granted in part and denied in part.

## I.    LEGAL STANDARD

A witness who has been qualified as an expert by knowledge, skill, experience, training, or education may give an opinion on scientific, technical, or otherwise specialized topics if (1) the expert's scientific, technical, or other special knowledge will help the trier of fact understand the evidence or determine a fact in issue, (2) the testimony is based upon sufficient facts or data, (3) the testimony is the product of reliable principles and methods, and (4) the witness has applied the principles and methods reliably to the facts of the case.  Fed. R. Evid. 702; *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043–44 (9th Cir. 2014).  The Court serves as a gatekeeper by "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993).

"Scientific evidence is reliable if it is based on an assertion that is grounded in methods of science—the focus is on principles and methodology, not conclusions."  *Metabolife Int'l, Inc. v. Wornick,* 264 F.3d 832, 841 (9th Cir. 2001).  The test of reliability is flexible, and the Court "must assess the expert's reasoning or methodology, using as appropriate criteria such as testability, publication in peer-reviewed literature, known or potential error rate, and general acceptance."  *City of Pomona*, 750 F.3d at 1044.  Other factors that might be considered include whether an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, *see General Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997), or whether an expert has adequately accounted for obvious alternative explanations, *see Claar v. Burlington Northern R. Co.,* 29 F.3d 499, 502 (9th Cir. 1994).

The judge should "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable."  *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).  Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury."  *Id.* at 969–70.  "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."

*Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). The Court has discretion to decide how to test an expert's reliability based on the type of expert testimony offered. *City of Pomona*, 750 F.3d at 1045. The test is the soundness of the methodology, with the fact finder weighing testimony that meets the threshold established by Rule 702. *Id.* The party offering the expert bears the burden of establishing that Rule 702 is satisfied. *Daubert*, 509 U.S. at 593 n. 10.

## II.    DISCUSSION

Defendants move to exclude plaintiff's expert, Dr. Armstrong, on three grounds: (1) Dr. Armstrong allegedly lacks the required qualifications, knowledge, experience or education to render opinions in this matter; (2) Dr. Armstrong failed to consider all relevant information in reaching her opinions; and (3) Dr. Armstrong rendered no opinion as to plaintiff's mental state following her arrest and detention, and therefore may not testify to any psychological harm caused to plaintiff by defendants' alleged conduct. Doc. 54. Plaintiff opposes the first and second grounds of the motion, arguing that Dr. Armstrong is qualified given her more than 30 years of experience in providing psychological assessments, and that she sufficiently reviewed the relevant documentation to enable her to make an informed assessment. Doc. 58. Plaintiff does not oppose the third ground of the motion.

### 1.    Dr. Armstrong's Qualifications

As further clarified at the motion in limine hearing, plaintiff seeks to have Dr. Armstrong testify as to whether, based on the information available at the time, plaintiff (a) was a threat to herself, (b) was a threat to others, or (c) was gravely disabled, such that she could be subjected to a 5150 hold. Doc. 54–2 at 2–3. Rule 702 "contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 (9th Cir. 2004) (emphasis omitted). However, while an expert need not be officially credentialed in the specific matter under dispute, she must nonetheless have the requisite "knowledge, skill, experience, training, or education" in the field in which her opinions are based. *See U.S. v. Garcia*, 7 F.3d 885, 889–90 (9th Cir. 1993); Fed. R. Evid. 702.

In her curriculum vitae, Dr. Armstrong's profile states she is a licensed psychologist and clinical nurse specialist, with more than 30 years of experience providing psychological

1    assessments and expert witness consulting.  *Id.* at 7–10.  Dr. Armstrong holds a Doctor of

2    Psychology (PsyD) degree and master's and bachelor's degrees in nursing.  *Id.* at 7.

3    Dr. Armstrong taught psychiatry and biobehavioral sciences for six years at the UCLA School of

4    Medicine and also held faculty positions at two other universities.  *Id.* at 9.  Dr. Armstrong has

5    also published or presented psychology research.  *Id.*  In her deposition, Dr. Armstrong stated she

6    has given sworn testimony in approximately 150 to 200 depositions and 35 to 40 trials.  Doc. 58–

7    1 at 12–13.  Given Dr. Armstrong's extensive experience in psychological assessments, she is

8    qualified to opine, based on her review, on whether the records reflect plaintiff presented a risk of

9    self-harm, a risk of harm to others, or a grave disability at the time defendants placed her on a

10   § 5150 hold.

11        However, Dr. Armstrong may not testify as to the legal conclusion of whether there was

12   probable cause for the 5150 detention or whether there was "very possibly a direct violation of

13   [plaintiff's] civil rights."  Doc. 54–2 at 5–6.  Under Rule 704(a), an opinion is not objectionable

14   just because it embraces an ultimate issue.  Fed. R. Evid. 704(a).  But "an expert witness cannot

15   give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law."  *United*

16   *States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (citing *Hangarter v. Provident Life &*

17   *Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004)).  "This prohibition of opinion testimony on

18   an ultimate issue of law recognizes that, '[w]hen an expert undertakes to tell the jury what result

19   to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the

20   expert's judgment for the jury's.'"  *Id.* (internal citations omitted) (emphasis in original).

21        In a case alleging unlawful seizure, the ultimate question is whether the officer had

22   probable cause to detain an individual, in this case based on a § 5150 hold.  *See People v. Keil*, 73

23   Cal. Rptr. 3d 600, 603 (Cal. Ct. App. 2008).  Accordingly, Dr. Armstrong may testify as to

24   whether, based on her review, plaintiff presented a risk of self-harm, a risk of harm to others, or a

25   grave disability at the relevant time, but she may not testify as to whether the officers had

26   sufficient probable cause to execute a § 5150 hold or whether plaintiff's civil rights were violated.

27   *See Torres v. Los Angeles*, 548 F.3d 1197, 1214 n.11 (9th Cir. 2008) (district court abused its

28   discretion when it allowed defense expert to testify that there was probable cause to arrest the

plaintiff).  Such opinions intrude upon the jury's role and would be an improper attempt to substitute her opinion for the jury's judgment.  *Diaz*, 876 F.3d at 1197.

### 2. Dr. Armstrong's Consideration of Relevant Information

Defendants argue that Dr. Armstrong failed to consider all relevant documentation in reaching her opinion that plaintiff was "certainly not gravely disabled."  Doc. 54–2 at 5–6.  In her deposition, Dr. Armstrong states that, in preparing her report, she reviewed "records of Tulare County Health and Human Service Department, medical records, and the police report prepared by Nathan Henry of the Visalia Police Department."  *Id.* at 23.  Defendants argue that, in preparing her report, Dr. Armstrong should have also interviewed the plaintiff and reviewed additional material, including the defendants' depositions and testimony from social workers and others who interacted with plaintiff before she was placed on a § 5150 hold.  Without such review, defendants argue, her opinions were "based on incomplete information and data."  Doc. 54 at 8.

Defendants' argument is unavailing.  To the extent defendants argue that a review of additional information would undermine Dr. Armstrong's conclusions as to plaintiff's condition at the time of her detention, "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."  *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1392 (Fed Cir. 2003).  Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Daubert*, 509 U.S. at 595.  To the extent defendants argue that the additional information conflicts with Dr. Armstrong's opinions, that may be fertile ground for cross examination to test Dr. Armstrong's conclusions, but it is not a basis to exclude her testimony entirely.

### 3. Dr. Armstrong's Opinion as to Plaintiff's Mental State following her Arrest and Detention

While plaintiff's expert disclosure indicated that Dr. Armstrong would testify to "the psychological harm caused to plaintiff by the conduct and detention of each individually named defendant," Doc. 54–2 at 2–3, at the motion in limine hearing on March 17, 2025, plaintiff

confirmed that Dr. Armstrong was not being proffered to testify as to such harm.  Dr. Armstrong also confirmed in her deposition that she had no opinion on this issue.  Accordingly, defendants' motion is granted as to this ground.  Dr. Armstrong shall not testify at trial as to any claimed psychological harm caused to plaintiff by her detention and defendants' conduct.

## III.    CONCLUSION

Defendants' motion in limine as to plaintiff's expert, Dr. Julie Armstrong, Doc. 54, is granted in part and denied in part, as set forth above.

IT IS SO ORDERED.

Dated:    March 27, 2025

_____
UNITED STATES DISTRICT JUDGE

6